# EXHIBIT A

*Chris Kachiroubas*
e-filed in the 18th Judicial Circuit Court
********* DuPage County *********
**TRAN# : 170431230765/( 4530150 )**
**2019L000517**
**FILEDATE : 05/21/2019**
*Date Submitted : 05/21/2019 02:50 PM*
*Date Accepted : 05/21/2019 03:54 PM*
**CRAVEN,BRENDAN**
*****************************

**Notice and Acknowledgment of
Receipt of Summons and Complaint**

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUINTY, ILLINOIS, LAW DIVISION

LEEN ABUSALEM

Plaintiff(s) | Case No. 2019 L 000517

vs.

THE STANDARD MARKET, LLC

Defendant(s)

## NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

To: The Standard Market, LLC          c/o Brian J. Mulhern, Registered Agent
         (Name)          Address: 15 Salt Creek Lane, Ste. 200

City: Hinsdale          State: IL Zip: 60521

The enclosed summons and complaint are served pursuant to section 2--213 of the Code of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed

form to the sender within ___30___ * days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within ___30___ * days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within ___60___ ** days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and complaint will have been mailed on ___5/13/2019___ .

Page 1 of 2

**Notice and Acknowledgment of**
**Receipt of Summons and Complaint**

E-filing is now mandatory for documents in civil cases with limited exemptions. To
e-file, you must first create an account with an e-filing service provider. Visit http://efile.
illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If
you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/
gethelp.asp.

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in
the above captioned matter at:

(Please print or type)

Name: _Brian J. Mulhern_

Address: _15 Salt Creek Lane, Suite 200_

City: _Hinsdale_   State: _IL_   Zip: _60521_

Email: _BMulhern @ Mulhern-Law. com_

Relationship to Entity/Authority to Receive Service of Process: _Registered Agent_
(Not applicable if your are the named Defendant or Respondent.)

Dated: _May 17, 2019_

_Brian J. Mulhern_
Signature

---

\*   (To be completed by the person sending the notice.) Date for return of waiver must be at least 30 days from the date
    on which the request is sent, or 60 days if the defendant is addressed outside the United States.

\*\*  (To be completed by the person sending the notice.) Date for answering complaint must be at least 60 days from the
    date on which the request is sent, or 90 days if the defendant is addressed outside the United States.

*Chris Kachiroubas*
e-filed in the 18th Judicial Circuit Court
******** DuPage County ********
**TRAN# : 170431222590/( 4521966 )**
**2019L000517**
**FILEDATE : 05/09/2019**
*Date Submitted : 05/09/2019 03:16 PM*
*Date Accepted : 05/09/2019 04:18 PM*
**DAGGETT,SANDRA**
STATUS 08/06/2019 RM 2008 9AM
························

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DUPAGE COUNTY, ILLINOIS, LAW DIVISION**

LEEN ABUSALEM, individually and on behalf
of all others similarly situated,

        *Plaintiff,*

v.

THE STANDARD MARKET, LLC

        *Defendant,*

Case No.: **2019L000517**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Leen Abusalem ("Abusalem" or "Plaintiff") brings this Class Action Complaint
and Demand for Jury Trial against The Standard Market, LLC ("Standard Market") to put a stop
to its unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive
biometric data. Plaintiff alleges as follows upon personal knowledge as to Plaintiff's own acts and
experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1.     Defendant Standard Market currently, or in the past 5 years, has operated in
Naperville, Illinois and Westmont, Illinois.  It operates Bakersfield Wood Fired Grill, Standard
Tacos & Margarita, The Standard Grill, and grocery stores.

2.     When employees work at Standard Market, they are required to scan their
fingerprint in its biometric time tracking system as a means of authentication, instead of using only
key fobs or other identification cards.

3.     While there are tremendous benefits to using biometric time clocks in the
workplace, there are also serious risks. Unlike key fobs or identification cards—which can be

changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

5.     Despite this law, Standard Market disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Standard Market has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff' and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

6.     Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

7.     Plaintiff is a natural person and citizen of the State of Illinois.

8.     Defendant Standard Market is an Illinois LLC headquartered in Westmont, Illinois.

2

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois, and has committed tortious acts in Illinois.

10.     Venue is proper in DuPage County because Defendant operates in this County.

## FACTUAL BACKGROUND

### I.      The Biometric Information Privacy Act.

11.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. See 740 ILCS 14/5.

12.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

13.     Recognizing the "very serious need [for] protections for the citizens of Illinois

3

when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

14.     The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

15.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

16.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17.     The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently

4

destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

18.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.     Standard Market Violates the Biometric Information Privacy Act.

19.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

20.     Unfortunately, Standard Market specifically failed to take note of the passage of the BIPA. Standard Market continues to collect, store, and use its employees' biometric data in violation of the BIPA.

21.     Specifically, when employees work at Standard Market, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

22.     Standard Market uses an employee time tracking system that requires employees to use their fingerprints as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprint to "punch" in to or out of work.

5

23.     Standard Market failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

24.     Standard Market similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Standard Market databases—or if they ever will be.

25.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Standard Market —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Standard Market disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

26.     Ultimately, Standard Market disregards its employees' statutorily protected privacy rights by violating the BIPA.

### FACTS SPECIFIC TO PLAINTIFF

27.     Plaintiff worked for Standard Market in Illinois, ending in early 2019.

28.     As an employee, Standard Market required Plaintiff to scan Plaintiff's fingerprint so that it could use it as an authentication method to track time. Standard Market subsequently stored Plaintiff's fingerprint data in its databases.

6

29.     Each time Plaintiff began and ended a workday, Standard Market required a scan of Plaintiff's fingerprints.

30.     Standard Market never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

31.     Similarly, Standard Market never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

32.     Plaintiff never signed a written release allowing Standard Market to collect or store fingerprints.

33.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Standard Market violations of the BIPA alleged herein.

34.     Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Standard Market has caused.

## CLASS ALLEGATIONS

35.     **Class Definition**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Standard Market while residing in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

Document received on 5/9/19 3:16 PM  Document accepted on 05/09/2019 16:21:37 # 4521966/170431222590

36.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

37.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a) whether Defendant collected, captured, or otherwise obtained Plaintiff and the Class' biometric identifiers or biometric information;

    b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

    c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

    d) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

    e) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

    f) whether Defendant complies with any such written policy (if one exists); and

    g) whether Defendant used Plaintiff and the Class' fingerprints to identify them.

38.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex

8

litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

39. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

40. Plaintiff incorporate the foregoing allegations as if fully set forth herein.

41. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private

Document received on 5/9/19 3:16 PM Document accepted on 05/09/2019 16:21:37 # 4521966/170431222590

entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

42.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.*, when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

43.     Unfortunately, Standard Market fails to comply with these BIPA mandates.

44.     Standard Market qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

45.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Standard Market (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

46.     Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

47.     Standard Market violated 740 ILCS 14/15(b)(3) by negligently failing to obtain

10

written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

48.     Standard Market violated 740 ILCS 14/15(b)(1) by negligently failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

49.     Standard Market violated 740 ILCS 14/15(b)(2) by negligently failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

50.     Standard Market violated 740 ILCS 14/15(a) by negligently failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

51.     By negligently collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Standard Market violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq.*

52.     On behalf of themselves and the Class, Plaintiff seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $1,000 per violation for each of Defendant's negligent violations of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and for the Class, respectfully request that the Court

11

enter an Order:

      A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

      B.     Declaring that Defendant's actions, as set out above, violate the BIPA;

      C.     Awarding statutory damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20(1);

      D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

      F.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

      G.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

      H.     Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demand a trial by jury for all issues so triable.

12

Respectfully submitted,

LEEN ABUSALEM individually and on behalf of
all others similarly situated,

Dated: May 9, 2019      By:    /s/    David Fish   
                        One of Plaintiff's Attorneys

David Fish
dfish@fishlawfirm.com
Seth Matus
smatus@fishlawfirm.com
Kimberly Hilton
khilton@fishlawfirm.com
John Kunze
jkunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
admin@fishlawfirm.com
DuPage # 218726

13

DEMAND FOR A JURY TRIAL

2123 (Rev. 9/16)

| **STATE OF ILLINOIS** | **UNITED STATES OF AMERICA** | **COUNTY OF DU PAGE** |
| | IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT | |

Leen Abusalem

**2019L000517**

PLAINTIFF / PETITIONER

VS

**CASE NUMBER**

The Standard Market, LLC

DEFENDANT / RESPONDENT

*Chris Kachiroubas*
e-filed in the 18th Judicial Circuit Court
********* DuPage County *********
TRAN# : 170431222590/( 4521966 )
2019L000517
FILEDATE : 05/09/2019
*Date Submitted : 05/09/2019 03:16 PM*
*Date Accepted : 05/09/2019 04:20 PM*
DAGGETT,SANDRA
**********************

File Stamp Here

## JURY DEMAND

TO: **CHRIS KACHIROUBAS**, Clerk of the Eighteenth Judicial Circuit Court

The ☒ Plaintiff/Petitioner    in the above entitled cause demands a jury for the trial of said cause.
☐ Defendant/Respondent

This matter should be tried by a   ☐ jury of six
                        ☒ jury of twelve

Leen Abusalem
Plaintiff/Petitioner

_____
Defendant/Respondent

David J. Fish/The Fish Law Firm, P.C.
Their Attorney

Name: **The Fish Law Firm, P.C.**    ☐ Pro Se
DuPage Attorney Number: **218726**
Attorney for: **Plaintiff**
Address: **200 E. 5th Ave., Suite 123**
City/State/Zip: **Naperville, IL 60563**
Telephone Number: **630-355-7590**
Email: **admin@fishlawfirm.com**

AFFIDAVIT OF DAMAGES

2348 (Rev. 03/07)

**UNITED STATES OF AMERICA**

**STATE OF ILLINOIS**     IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT     **COUNTY OF DU PAGE**

Leen Abusalem

vs

The Standard Market, LLC

**2019L000517**

**CASE NUMBER**

*Chris Kachiroubas*
e-filed in the 18th Judicial Circuit Court
********* DuPage County *********
TRAN# : 170431222590/( 4521966 )
2019L000517
FILEDATE : 05/09/2019
Date Submitted : 05/09/2019 03:16 PM
Date Accepted : 05/09/2019 04:22 PM
DAGGETT,SANDRA
****************************

File Stamp Here

# AFFIDAVIT OF DAMAGES

## SUPREME COURT RULE 222

The undersigned being first duly sworn upon oath, deposes and states that he / she is a party to the above entitled cause of action seeking money damages or collection of taxes and states that this cause of action

☐ does **not** exceed $50,000.00          ☒ **does** exceed $50,000.00

/s/David J. Fish

Sworn and Subscribed before me

May 9, 2019
Date

Notary Public / Circuit Court Clerk

OFFICIAL SEAL
NICODEM/SANDERS
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/17/22

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS, LAW DIVISION**

| | |
|---|---|
| LEEN ABUSALEM, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| v. | Case No.:  2019 L 000517 |
| THE STANDARD MARKET, LLC | Chris Kachiroubas<br>e-filed in the 18th Judicial Circuit Court<br>DuPage County<br>ENVELOPE: 6682738<br>2019L000517<br>FILEDATE: 9/23/2019 5:21 PM<br>Date Submitted: 9/23/2019 5:21 PM<br>Date Accepted: 9/24/2019 8:13 AM<br>DP |
| *Defendant,* | |

**NOTICE OF FILING**

To:     Thomas J. Soto / Greenberg Traurig, LLP
        77 West Wacker Drive, Suite 3100, Chicago, IL 60601

PLEASE TAKE NOTICE that on September 23, 2019, I filed with the Circuit Court of DuPage County, Wheaton Illinois the **Amended Class Action Complaint and Demand for Jury Trial**, a copy of which is attached hereto and hereby served upon you.

Dated: September 23, 2019                    Respectfully submitted,

                                             **LEEN ABUSALEM** individually and on behalf of all
                                             others similarly situated,

                                    By:      /s/    David Fish_____
                                             One of his Attorneys

**CERTIFICATE OF SERVICE**

I, a non-attorney, certify that a true and correct copy of the foregoing Notice and Amended Class Action Complaint was served on the above party via email on September 23 2019.

                                    By:      /s/Nicole M. Sanders_____

David J. Fish
Kimberly Hilton
John Kunze
THE FISH LAW FIRM, P.C.
200 E 5th Ave Suite 123
Naperville, Illinois 60563
T: 630-355-7590
F: 630-778-0400
Email:  dfish@fishlawfirm.com
DuPage County Atty No. 218726

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**
**DUPAGE COUNTY, ILLINOIS, LAW DIVISION**

Chris Kachiroubas
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 6682738
2019L000517
FILEDATE: 9/23/2019 5:21 PM
Date Submitted: 9/23/2019 5:21 PM
Date Accepted: 9/24/2019 8:13 AM
DP

LEEN ABUSALEM, individually and on behalf
of all others similarly situated,

        *Plaintiff,*

    v.

THE STANDARD MARKET, LLC

        *Defendant,*

Case No.:  2019 L 000169

## AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Leen Abusalem ("Abusalem" or "Plaintiff") brings this Amended Class Action Complaint and Demand for Jury Trial against Defendant The Standard Market LLC ("Standard Market") to put a stop to its unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Claims are also brought pursuant to the federal and state Worker Adjustment and Retraining Notification Act (the "WARN Act") because the Defendant abruptly shut down its Naperville grocery store and restaurant without providing 60 days prior notice to it workers. Plaintiff alleges as follows upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1.    Defendant Standard Market currently, or in the past 5 years, has operated in Naperville, Illinois and Westmont, Illinois. It operates Bakersfield Wood Fired Grill, Standard Tacos & Margarita, The Standard Grill, and grocery stores.

2.    When employees work at Standard Market, they are required to scan their fingerprint in its biometric time tracking system as a means of authentication, instead of using only

key fobs or other identification cards.

3.     While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.  For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

4.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

5.     A black market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/

worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

6. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

7. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

8. Despite this law, Standard Market disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Standard Market has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

9. Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

10. To make matters worse, a number of the Defendant's Naperville-based work force

3

was terminated and never told what happened to their biometric information when the Naperville facility closed.

11.     On top of this, the Defendant terminated its employees abruptly without providing them with 60 days-notice called for in the Worker Adjustment and Retraining Notification Act (the "WARN Act").

## PARTIES

12.     Plaintiff is a natural person and citizen of the State of Illinois.

13.     Defendant Standard Market is an Illinois LLC headquartered in Westmont, Illinois.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois, and has committed tortious acts in Illinois.

15.     Venue is proper in DuPage County because Defendant operates in this County.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

16.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

17.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique

biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

18.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

19.     The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

20.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

21. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

22. The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

23. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II. Standard Market Violates the Biometric Information Privacy Act.

24. By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

25.     Unfortunately, Standard Market specifically failed to take note of the passage of the BIPA. Standard Market continues to collect, store, and use its employees' biometric data in violation of the BIPA.

26.     Specifically, when employees work at Standard Market, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

27.     Standard Market uses an employee time tracking system that requires employees to use their fingerprints as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprint to "punch" in to or out of work.

28.     Standard Market failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

29.     Standard Market similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Standard Market databases—or if they ever will be.

30.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Standard Market —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Standard Market disregards these obligations, and instead unlawfully collects, stores, and uses its employees'

biometric identifiers and information without proper consent.

31.     Ultimately, Standard Market disregards its employees' statutorily protected privacy rights by violating the BIPA.

**III.    The Warn Act.**

32.     The Illinois and United States Worker Adjustment and Retraining Notification Acts protecs employees, their families, and communities by requiring certain employers to provide 60 calendar-day advance notification of mass layoffs of employees, as defined in the respective federal and state laws.

33.     Advance notice gives workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain other jobs, and if necessary, to enter skill training or retraining that will allow these workers to compete successfully in the job market.

<div align="center">

**FACTS SPECIFIC TO PLAINTIFF**

</div>

34.     Plaintiff worked for Standard Market in Illinois, ending in early 2019.

35.     As an employee, Standard Market required Plaintiff to scan Plaintiff's fingerprint so that it could use it as an authentication method to track time. Standard Market subsequently stored Plaintiff's fingerprint data in its databases.

36.     Each time Plaintiff began and ended a workday, Standard Market required a scan of Plaintiff's fingerprints.

37.     Standard Market never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

38.     Similarly, Standard Market never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

39.     Plaintiff never signed a written release allowing Standard Market to collect or store

fingerprints.

40.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Standard Market violations of the BIPA alleged herein.

41.     Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Standard Market has caused.

42.     Furthermore, Plaintiff worked at Standard Market in Naperville.  The Defendant failed to provide 60 days-advance written notice to its Naperville workforce, including Plaintiff, that it was closing its Naperville facility.

43.     Standard Market, in fact, closed its Naperville facility effective March 30, 2019 and many learned about the impending closure 3 days earlier when, on March 27, 2019, The Daily Herald and the Chicago Tribune ran stories about its closure.

44.     Plaintiff unexpectedly learned about the Defendant's closure on Facebook.

<div align="center"><strong>CLASS ALLEGATIONS</strong></div>

45.     **Class Definitions**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of herself and a Class of similarly situated individuals, defined as follows:

> **BIPA Class**:  All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Standard Market while residing in Illinois.

> **WARN Class**:All employees who worked at the Naperville Facility and were terminated as part of a mass layoff ordered by the Defendant at the Naperville Facility on or about March 27, 2019 and thereafter.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely

request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

46. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

47. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a) whether Defendant collected, captured, or otherwise obtained Plaintiff and the Class' biometric identifiers or biometric information;

    b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

    c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

    d) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

    e) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

    f) whether Defendant complies with any such written policy (if one exists); and

g)  whether Defendant used Plaintiff and the Class' fingerprints to identify them.

h)  whether the Defendant was required to provide Warn notification.

i)  whether the Defendant provided Warn notification.

j)  whether the Class Members were employees of the Defendant who worked at or reported to the Facility;

k)  whether Defendant terminated the employment of the Class Members as part of a mass layoff without cause on their part and without giving them 60 days advance written notice;

l)  whether the Defendant may rely on the WARN Act's "unforeseeable business circumstances" or "faltering company" defense.

m) whether Defendant's failure to provide 60 days notice should render it liable to the Class Members for 60 days pay and benefits.

48.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

49.    **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful

conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of**
**BIPA Section 15(a): Failure to Institute, Maintain and Adhere to Publicly-Available**
**Retention Schedule**

50.     Plaintiff incorporate the foregoing allegations as if fully set forth herein.

51.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

52.     Defendant fails to comply with these BIPA mandates.

53.     Defendant is an entity registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

54.     Plaintiffs are individuals who had their "biometric identifiers" (in the form of their fingerprints) collected by Defendant, as explained in detail above, *supra*. *See* 740 ILCS 14/10.

12

55.     Plaintiff's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA.  *See* 740 ILCS 14/10.

56.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

57.     Upon information and belief, Defendant lacked retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

58.     On behalf of themselves and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CAUSE OF ACTION**
**Violation of BIPA Section 15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

59.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity

to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

61.     Defendant fails to comply with these BIPA mandates.

62.     Defendant is an entity registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

63.     Plaintiff is an individual who had "biometric identifiers" (in the form of fingerprints) collected by Defendants, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

64.     Plaintiff'' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA.  *See* 740 ILCS 14/10.

65.     Defendant systematically and automatically collected, used, stored, and disclosed Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

66.     Defendant did not inform Plaintiff in writing that their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

67. By collecting, storing, and using Plaintiff's' and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

68. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### THIRD CAUSE OF ACTION
### Violation of BIPA Section 15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

69. Plaintiff incorporate the foregoing allegations as if fully set forth herein.

70. BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

71. Each Defendant fails to comply with this BIPA mandate.

72. Defendant is an entity registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

73. Plaintiff is an individual who had their "biometric identifiers" (in the form of their fingerprints) collected by Defendants, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

74. Plaintiff's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

75. Upon information and belief, by utilizing a biometric time clock, Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information to at least the payroll company hired by the Defendant without first obtaining the consent required by 740 ILCS 14/15(d)(1).

76. By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

77. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

78. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private

entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b) (emphasis added).

79.    The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

80.    Unfortunately, Standard Market fails to comply with these BIPA mandates.

81.    Standard Market qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

82.    Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Standard Market (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

83.    Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

84.    Standard Market violated 740 ILCS 14/15(b)(3) by failing to obtain written releases

from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

85.     Standard Market violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

86.     Standard Market violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

87.     Standard Market violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

88.     By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Standard Market violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq.*

89.     On behalf of themselves and the Class, Plaintiff seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Defendant's violations of the BIPA; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF—BIPA CLAIMS

WHEREFORE, Plaintiff individually and for the Class, respectfully request that the Court

enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

B.      Declaring that Defendant's actions, as set out above, violate the BIPA;

C.      Awarding damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20;

D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

**G.**  Awarding such other and further relief as equity and justice may require.

### FOURTH CAUSE OF ACTION
### Illinois Worker Adjustment and Retraining Notification Act
### 820 ILCS 65/1

89.     Plaintiff incorporate the foregoing allegations as if fully set forth herein.

90.     At all relevant times Defendant was an Illinois corporation which maintained an operating facility consisting of a grocery store, restaurant, and other operations on Ogden Avenue in Naperville, IL (the "Facility").

91.     At all relevant times, Plaintiff was an employee who was employed by Defendant and worked at or reported to the Facility until her termination without cause in or about March 27,

19

2019 or thereafter.

92.     On or about March, 2019 and thereafter, upon information and belief, Defendant ordered the termination of the Plaintiff's employment together with the termination of at least 50 other employees who worked at or reported to the Facility as part of a mass layoff as defined by the WARN Act, for which they were entitled to receive 60 days advance written notice under the WARN Act.

93.     At all relevant times, and upon information and belief, Defendant employed 75 or more employees, exclusive of part-time employees, or employed 75 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act.

105.     At all relevant times, upon information and belief, Defendant was an "employer," as that term is defined in 820 ILCS 65/5.

106.     On or about March 2019 and thereafter, the Defendant ordered a "mass layoff" at the Facility as that term is defined by 820 ILCS 65/5.

93.     At or about the time the Plaintiff was terminated, upon information and belief, Defendant ordered the termination of at least 75 other similarly situated employees who worked at or reported to the Facility (the "Other Similarly Situated Employees").

94.      Each of the Other Similarly Situated Former Employees is similarly situated to the Plaintiff in respect to his or her rights under the WARN Act.

95.     Defendant was required by the Illinois WARN Act to give the Plaintiff and the Other Similarly Situated Employees at least 60 days advance written notice prior to their terminations.

96.     Prior to their terminations, neither the Plaintiff nor the Other Similarly Situated

Employees received written notice that complied with the requirements of the Illinois WARN Act.

97.     Defendant failed to pay the Plaintiff and the Other Similarly Situated Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) days following their respective terminations and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

### FIFTH CAUSE OF ACTION
**United States Worker Adjustment and Retraining Notification Act**
29 U.S.C. § 2101

99.     Plaintiff incorporate the foregoing allegations as if fully set forth herein.

100.    At all relevant times Defendant was an Illinois corporation which maintained an operating facility consisting of a grocery store, restaurant, and other operations on Ogden Avenue in Naperville, IL (the "Facility").

101.    At all relevant times, Plaintiff was an employee who were employed by Defendant and worked at or reported to the Facility until her termination without cause in or about March 27, 2019 or thereafter.

102.    On or about March, 2019 and thereafter, upon information and belief, Defendant ordered the termination of the Plaintiff's employment together with the termination of at least 50 other employees who worked at or reported to the Facility as part of a mass layoff as defined by the WARN Act, for which they were entitled to receive 60 days advance written notice under the WARN Act.

103.    At or about the time the Plaintiff was terminated, upon information and belief, Defendant ordered the termination of at least 100 other similarly situated employees who worked at or reported to the Facility (the "Other Similarly Situated Employees").

104.    At all relevant times, Defendant employed 100 or more employees, exclusive of

part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act and employed more than 50 employees at the Facility.

105.    At all relevant times, Defendant was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) of WARN and 20 C.F.R. § 639.3(a).

106.    On or about March 2019 and thereafter, the Defendant ordered a "mass layoff" at the Facility as that term is defined by 29 U.S.C. § 2101(a)(3).

107.    The Plaintiff and the Class Members who were terminated by Defendant as a result of Defendant ordering a mass layoff at the Facility on or about March 2019 and thereafter were "affected employees" as defined by 29 U.S.C. § 2101(a)(5) of the WARN Act.

108.    The mass layoff at the Facility resulted in "employment losses," as that term is defined by the WARN Act for at least fifty (50) of Defendant's employees as well as 33% of Defendant's workforce at the Facility, excluding "part-time employees," as that term is defined by the WARN Act.

109.    The Plaintiff and each of the Class Members are "aggrieved employees" of the Defendant as that term is defined in 29 U.S.C. 2104 (a)(7).

110.    Pursuant to Section 2102 of WARN and 20 C.F.R. § 639.1 - § 639.10 et seq., Defendant was required to provide at least 60 days prior written notice of the terminations.

111.    Defendant failed to provide at least sixty (60) days prior notice to the Class Members of their terminations.

112.    The Defendant failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k)

contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

113.    As a result of Defendant's failure to pay the wages, benefits and other monies as asserted above, the Aggrieved Employees were damaged in an amount equal to the sum of the Class Members unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the members' terminations.

## Prayer for Relief—WARN Act

**WHEREFORE**, the Plaintiffs and Class Members demand judgment against the Defendant as follows:

a.    An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, for sixty (60) working days following the member employee's termination, all determined in accordance with the WARN Act;

b.    Certification that Plaintiff and the Class Members constitute a single class for purposes of their WARN Act claim;

c.    Interest as allowed by law on the amounts owed under the preceding paragraphs;

d.    Appointment of the undersigned attorneys as Class Counsel;

e.     The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Acts;

f.    Such other and further relief as this Court may deem just and proper.

## JURY TRIAL

Plaintiff demand a trial by jury for all issues so triable.

Dated: September 18, 2019              Respectfully submitted,

Plaintiff, individually and on behalf of all others
similarly situated,

By: ___/s/___ David Fish ___
          One of Plaintiff's Attorneys


David Fish
dfish@fishlawfirm.com
Seth Matus
smatus@fishlawfirm.com
Kimberly Hilton
khilton@fishlawfirm.com
John Kunze
kunze@fishlawfirm.com
Thalia Pacheco
thalia@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
admin@fishlawfirm.com
DuPage # 218726

ORDER - BLANK                                                        2116 (Rev. 2/16)

**STATE OF ILLINOIS**            **UNITED STATES OF AMERICA**        **COUNTY OF DU PAGE**
                    **IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

2180
1640
3840

Abusalem

vs

Standard
Market

19 L S 17
**CASE NUMBER**

**e-FILED**
JUN 10, 2019 10:21 AM
*Chus Kachuoubas*

**CLERK OF THE**
**18TH JUDICIAL CIRCUIT**
**DUPAGE COUNTY, ILLINOIS**

File Stamp Here

**ORDER**

This cause coming before the Court; the Court being fully advised in the premises, and having jurisdiction of the
subject matter, **IT IS HEREBY ORDERED:**

Plaintiff's motion for class certification is
entered and continued;

Defendants are to file responsive pleadings
on or before August 6, 2019;

Matter is continued to August 6, 2019 at
9:00 AM in room 2008 for case
management conference

October 28, 20 date is stricken

Fish Law Firm
Name: Thalia Pacheco            ☐ PRO SE        ENTER:
DuPage Attorney Number: 218726
Attorney for: Plaintiff
Address: 200 E Sun ave #123
City/State/Zip: Naperville, IL 60503         Judge
Telephone Number: (630) 255-7590        Date: 6-10-19
Email: tpacheco@fishlawfirm.com

**CHRIS KACHIROUBAS, CLERK OF THE 18th JUDICIAL CIRCUIT COURT ©**
**WHEATON, ILLINOIS 60187-0707**



# IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS, LAW DIVISION

LEEN ABUSALEM, individually and )
on behalf of all others similarly situated, )
                                   )
        Plaintiff, )      No. 2019 L 000517
                                   )
     v.                      )
                                   )
THE STANDARD MARKET, LLC, )
                                   )
        Defendant. )

**e-FILED**
AUG 06, 2019 10:35 AM
*Chus Kachnoubas*
CLERK OF THE
18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

## AGREED ORDER

This cause coming before the Court; the Court being fully advised in the premises, and having jurisdiction of the subject matter, IT IS HEREBY ORDERED:

1.     The deadline for Defendant to answer or otherwise respond to the Complaint is hereby extended to September 6, 2019.

2.     The case management conference scheduled for August 6, 2019 at 9:00 a.m. is hereby continued to September 16, 2019 at 9:00 a.m.

Dated: August __, 2019              ENTERED:

                                        Judge  8-5-19

1

ORDER - BLANK

#21

2116 (Rev. 2/16)

**STATE OF ILLINOIS**

Abusalem

vs

Standard
Market

**UNITED STATES OF AMERICA**
**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

WALSH

**CASE NUMBER**

**COUNTY OF DU PAGE**

File Stamp Here

**ORDER**

This cause coming before the Court; the Court being fully advised in the premises, and having jurisdiction of the
subject matter, **IT IS HEREBY ORDERED:**

Defendant's motion to dismiss is entered and
continued.

1) Plaintiff's amended complaint shall be filed
by 9-30-19

2) Defendant's ~~reply~~ responsive pleading shall be filed by 10-28-19

3) Hearing on Defendant's motion to dismiss
shall be on 11-19-19 at 9:00 AM in
room 2008

Name: The Fish Law Firm ☐ PRO SE

DuPage Attorney Number: 218726

Attorney for: Plaintiff

Address: 200 E 5th Ave, Suite 123

City/State/Zip: Naperville, IL 60503

Telephone Number: 630-355-7590

Email: tpachero@fishlawfirm.com

ENTER:

_____

Judge

Date: _____

**CHRIS KACHIROUBAS, CLERK OF THE 18th JUDICIAL CIRCUIT COURT ©**
**WHEATON, ILLINOIS 60187-0707**